IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONNIE RAPCHAK, *Executrix of the Estate of John E. Borzik, Deceased,* and WANDA BORZIK,<br><br>      **Plaintiffs,**<br><br>    vs.<br><br>FREIGHTLINER CUSTOM CHASSIS CORPORATION, HALDEX BRAKE PRODUCTS CORPORATION, and SAF-HOLLAND USA, INC.,<br><br>      **Defendants.** | 2:13-cv-1307 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION OF DEFENDANT FREIGHTLINER CUSTOM CHASSIS CORPORATION TO COMPEL DISCOVERY (ECF No. 57) and PLAINTIFFS' MOTION TO DISASSEMBLE THE SUBJECT HALDEX VALVE (ECF No. 58). The issues have been fully briefed via Defendant Freightliner Custom Chassis Corporation's ("Freightliner") brief in support (ECF No. 59); Plaintiffs' response (ECF No. 60) and brief in opposition (ECF No. 61); Freightliner's brief in opposition (ECF No. 62); the Declaration of Robert Butler, Ph.D., P.E. (ECF No. 63) filed by Freightliner; and Freightliner's reply brief (ECF NO. 66). The Court held an oral argument on Tuesday, August 5, 2014. Accordingly, the motions are ripe for disposition.

  **I.**  **Background**

This case arose out of the tragic death of John E. Borzik while inspecting the undercarriage of his 2008 Tour Master recreational motorhome on September 11, 2011. At that time, Mr. Borzik positioned himself near the right side of the rear axle lying supine on a creeper

under the structure when it unexpectedly descended, trapped him, compressed his chest and caused him to asphyxiate over a period of time which eventually led to his death. Plaintiffs aver that "the structure of the motorhome descended because the height control valves and/or dump valves in the suspension system of the chassis malfunctioned and did not perform as intended or expected by permitting air to escape from the rear." Compl. at 8, ECF No. 1. According to Plaintiffs, an air leak through a port in the front-mounted dump valve was detected soon after the decedent's body was found.

Defendants designed, manufactured, assembled, and/or sold the motorhome, its chassis, and the air suspension system. Freightliner manufactures motorhome chassis; Haldex Brake Products Corporation ("Haldex") manufactures the height control / dump valve(s) which Plaintiffs allege malfunctioned; and SAF-Holland, Inc. ("SAF-Holland") manufactures the suspension system which was used in the motorhome. According to Defendants, the motorhome and the trailer that was attached to it on the date of the incident were not on level ground, which may have caused or contributed to the purported malfunction. *See* Def.'s Resp., Ex. 5 at 1-3, ECF No. 60-5.

Plaintiff Bonnie Rapchak is the Executrix of decedent's estate; Plaintiff Wanda Borzik is his mother. As Plaintiffs aver, Ms. Borzik observed her son shortly after the accident and "perceived that [he] was seriously injured or in the process of dying." Compl. at 21, ECF No. 1.

**A. Relevant Facts**

On April 16, 2012, Rapchak filed a Writ of Summon in the Court of Common Pleas of Washington County in which it named Haldex, Freightliner Custom Chassis Corp., Freightliner Corp., SAF-Holland and Power Gear, Corp. *See* Def.'s Mot. to Compel, Ex. 1, ECF No. 57-1. Court records indicate that Power Gear filed a Rule to File Complaint on May 4, 2012; that

Judge DiSalle issued an order on May 21, 2012 regarding the custody and control of the motorhome; and that Rapchak filed a Praecipe to Discontinue on July 9, 2012.

On May 9, 2012, counsel for Plaintiffs sent opposing counsel a correspondence in which he raised the issue of conducting an inspection of the motorhome. *See* Pls.' Reply, Ex 1 at 4, ECF No. 60-1. The date of the inspection was ultimately scheduled on August 14, 2012. On July 25, 2012, counsel for Plaintiffs sent opposing counsel another correspondence in which he enclosed a proposed protocol for the inspection. *See id.*, Ex 6 at 2-3, ECF No. 60-6. Notably, the proposed protocol calls for "[t]he removal of the height control valve and replacement with the new valve."[1] *Id.* at 2.

Defendants did not provide an alternative protocol or seek any legal recourse to prevent the removal of the valve.[2] Counsel for Defendants who were present at the inspection did, however, apparently voice an objection to the removal of the valve. Defendants' counsel also sought to conduct additional testing and examination of the motorhome, which included cycling the suspension system, removing the vehicle from its original setting and placing it on a level surface, and evaluating the load being exerted on the trailer hitch. After conferring with his consultants, Plaintiffs' counsel did not allow further cycling or the repositioning of the motorhome but provided Defendants with the opportunity to conduct load testing.

During the August 14, 2012 inspection, Plaintiffs' consultants removed the valve and installed an identical model. Afterward, the suspension system apparently operated normally—

---

1. This fact is contrary to Freightliner's suggestion that it was not provided advance notice of the planned removal. *C.f.* Def.'s Mot at 2, ¶ 4 ("During the inspection, plaintiffs' representatives identified an air valve that they believed to have malfunctioned (the 'Subject Valve') and informed all present that they intended to remove the Subject Valve from the Subject Vehicle.").

2. Freightliner submits that "[b]ecause (a) no judge had yet been assigned; and (b) the inspection was taking place in a remote section of Greene County, Pennsylvania, Freightliner and the other potential defendants were not in a position to prevent plaintiffs from proceeding." Def.'s Mot. at 3, ECF No. 57. That position is unavailing. Of course, Freightliner had ample opportunity between July 25, 2012 and August 14, 2012 to file an action seeking injunctive relief in either this Court or the appropriate state court. *See* Fed. R. Civ. P. 65; Pa. R. Civ. P. 1531.

*i.e.*, it did not leak air or otherwise malfunction. From Plaintiffs' perspective, the operation and function of the replacement suggests "that a contaminant or malfunctioning or mispositioned internal component of the valve had caused the valve outlet mechanism to remain open allowing the air to exhaust through the outlet part." Pls.' Mot. at 3, ECF No. 58. Plaintiffs further maintain that a foreign substance was observed through a port hole after the valve was removed, which they suspect is a sealant or compound used in the assembly of the suspension system.

On August 9, 2013, Haldex attempted to test the subject valve at its facility in Kansas City, Missouri with two of Plaintiffs' consultants in attendance along with representatives of the other Defendants. Plaintiffs describe what transpired at Haldex as follows:

> Expecting the expulsion of contaminants when the test equipment would force air into the valve at high pressure, the parties agreed that a cloth would be placed at the mouth of the exit port to catch any expelled contaminants, which then could be tested. However, before the cloth was in place, high pressure air blew a substance in particle form out of the valve, which could be not only seen but felt when the particles struck the consultants.

Pls.' Mot. at 3-4, ECF No. 58. It is unclear as to why safeguards were not in place to capture any particles expelled from the valve. Nevertheless, all parties consented to Haldex testing the valve in a manner that was supposed to mimic a factory procedure used on new products.

**B. Procedural History**

Plaintiffs initiated this action on September 6, 2013 by filing a five-count Complaint in which they allege various product liability claims at Counts One-Four[3] and a negligent and/or intentional infliction of emotional distress claim at Count Five. Plaintiffs seek damages pursuant to the Pennsylvania Survival Action, 42 P.S. § 8302 and the Wrongful Death Act, 42 P.S. § 8301. Additionally, Plaintiffs claim they are entitled to an award of punitive damages.

---

3. Count Four—*Bonnie Rapchak v. Gulf Stream Coach, Inc. & Touch Master Recreational Vehicles, Inc.*—is no longer operative as both of those parties have been dismissed from this case.

4

A variety of responsive filings followed, including motions to dismiss the punitive damages aspects of Plaintiffs' claims. (ECF No. 43). By Memorandum Opinion, the Court denied those motions on December 18, 2013.

The instant motions were both filed on June 10, 2014. Halex and SAF-Holland have not taken a position as to either motion.

**II.     Standard of Review**

"Several courts have recognized that production of 'tangible things' for purposes of destructive testing falls under the scope of Rule 34." *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006) (collecting cases). Federal Rule of Civil Procedure 34 provides that a party "may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated tangible things" in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1)(B). In turn, Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."

**III.    Discussion**

Plaintiffs now seek to disassemble the valve to view the internal components and test any foreign substance that they may find inside. Plaintiffs acknowledge that the disassembly of the valve may result in its destruction, but they also highlight that their proposed testing does not involve cutting the metal component(s) which may allow for reassembly.

Freightliner does not object to Plaintiffs' proposed testing at a future point, but it first seeks to reinstall the subject valve on the motorhome for additional testing so that it may

5

determine whether the subject valve functions differently if the motorhome rests on level ground as opposed to a slightly elevated position as it was on the day of the incident.[4]

Plaintiffs oppose reinstallation for several reasons. For example, Plaintiffs submit that the subject valve is no longer in its original condition after the Haldex testing dispelled some matter from the outlet; that Freightliner may use any Haldex valve to compare how it functions on level ground; and that the continued recycling of air pressure through the valve has a tendency to change the internal components. Plaintiffs further assert that Freightliner's proposed testing, although it involves no disassembly, will reduce or eliminate any contamination left in the valve before it is viewed and tested, causing prejudice to the parties who bear the burden of proof.

The decision of whether to allow testing, destructive and non-destructive alike, rests within the sound discretion of the district court. *See Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408 (S.D. Tex. 2013) (citing *Ostrander v. Cone Mills, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988)). In the exercise of that discretion, the United States District Court for the District of Maryland has identified four specific inquiries to consider in balancing the costs of altering the object against the benefits of obtaining the evidence sought:

---

4. In support of its position, Freightliner includes the declaration of its retained expert Robert J. Butler, Ph.D., P.E. who attests as follows:

> The Subject Valve should not have been removed from the Subject Vehicle, as it is now more difficult for me to determine whether it was installed, maintained, or operated properly. Nevertheless, reinstallation of the Subject Valve will allow me to perform tests that will assist me in reaching an opinion regarding the cause of the incident. This is especially true since, at the time of the initial inspection (prior to my retention by Freightliner), the Subject Vehicle was in an unusual position on an uneven surface, with a trailer attached. Scene photographs reveal that the left side of the trailer was elevated with its wheel positioned on a wheel ramp. Thus, during the course of the initial inspection, tests were conducted by plaintiffs with one or more wheels of the trailer lifted off of this uneven surface. It is therefore important that the Subject Valve be reinstalled on the Subject Vehicle and that I be permitted to inspect the Subject Vehicle with all of its component parts installed on a level surface. This will assist me in determining whether the elevated position of the left side of the trailer and the resultant forces placed on the trailer hitch of the Subject Vehicle played a role in Mr. Borzik's incident."

Decl. of Butler at 3-4, ECF No. 57-2. *See also* Def.'s Reply at 3 & n.1.

> (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; (3) whether there are any less prejudicial alternative methods of obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.

*Mirchandani*, 235 F.R.D. at 614. Several courts have found this framework instructive in determining whether destructive testing is appropriate under the circumstances. *See, e.g.*, *USF Ins. Co. v. Smith's Food & Drug Centers, Inc.*, 2:10-CV-01513-RLH, 2011 WL 5007956, at \*\*2-3 (D. Nev. Oct. 19, 2011); *Bostic v. Ammar's, Inc.*, CIV.A. 03-146-ART, 2011 WL 251009, at \*\*3-5 (E.D. Ky. Jan. 26, 2011); *Glennon v. Wing Enterprises, Inc.*, CIV.A. 10-0324 JAP, 2010 WL 4782773, at \*\*12-13 (D.N.J. Nov. 17, 2010). This Court will follow that approach.

For the reasons that follow, the Court will grant Plaintiff's motion to disassemble and deny Freightliner's motion to compel.

### A. Reasonable, Necessary, and Relevant

As to the first inquiry, the *Mirchandani* Court observed that "a party may not use destructive testing merely to bolster an expert opinion or to gain other potentially intriguing, albeit irrelevant, information." 235 F.R.D. at 615. The evidence sought must instead "be integral to proving the movant's case and do more than strengthen an already established claim or defense." *Id.* Additionally, "[w]hile plaintiffs must show that the evidence sought through destructive testing is necessary to prove their case (a more stringent standard than that applied to more routine discovery requests), the burden is not so high as to require definitive proof that plaintiffs' hypothesis will prove correct." *Id.*

Based on these considerations, the Court finds that Plaintiffs have shown that their proposed testing is relevant, reasonable and necessary. The disassembly and internal inspection

7

of the valve is the only manner in which Plaintiffs may examine the components and sample any foreign matter that may exist. Further, Plaintiffs' theory that this so-called contamination may exist is not so speculative and unsubstantiated as to not warrant discovery—the August 14, 2012 removal and the August 9, 2013 Haldex test both revealed some visible substance consistent with Plaintiffs' theory. In contrast, Freightliner's proposed testing risks the elimination of that material. Freightliner also cannot adequately explain why it requires the reinstallation of the subject valve (which is no longer in its original condition based on the events that unfolded at Haldex) to test whether the (mal)-positioning of the motorhome/trailer caused or attributed to the alleged failure of the suspension system. Accordingly, this initial inquiry weighs in favor of Plaintiffs.

### B. Prejudice to Defendants

At the second step, the *Mirchandani* Court framed the inquiry as "whether the deprivation of the ability to make a live presentation to the jury—as opposed to showing the jury a videotaped presentation—is enough to outweigh the benefits of providing plaintiffs the ability to test the [product in question]." *Id.* at 616. Freightliner does not claim that Plaintiffs' proposed testing will result in this sort of deprivation.

Freightliner instead claims that it will be prejudiced by the disassembly of the valve because it will be foreclosed from conducting its desired test(s). But as the Court has explained, Freightliner has only identified its need to test the positioning of the motorhome / trailer which does not require the subject valve. *See supra* n.4. The use of the subject valve instead risks significant prejudice to Plaintiffs who bear the ultimate burden of proof. Accordingly, the Court finds that the prejudice to Freightliner is outweighed by the potential discovery that may be obtained from Plaintiffs' proposed testing.

8

### C. Non-Destructive Alternative Methods

"The third area of inquiry is whether there are any non-destructive alternative methods of testing." *Mirchandani*, 235 F.R.D. at 616. Although "[t]here do not appear to be any cases that have turned on the validity of alternative non-destructive methods of obtaining the evidence sought . . . this prong encourages the party opposing destructive testing to suggest less destructive and less prejudicial counter-proposals, and appears to be limited only by the imagination of the non-movant." *Id.*

The parties have not submitted to the Court any viable alternatives to Plaintiffs' proposed testing. Freightliner did, however, inquire with Plaintiffs as to whether "there are alternatives that could take the place of disassembly (*i.e.*, x-rays, etc.)." Def.'s Mot., Ex. D, ECF No. 57-4. Nevertheless, absent a proposed alternative, the Court cannot sufficiently weigh this consideration.

### D. Adequate Safeguards

"The final inquiry of the four-pronged test involves consideration of the safeguards that may be put in place to minimize the potential for prejudice to the non-movants." *Mirchandani*, 235 F.R.D. at 616-17. Those safeguards include:

> (1) Adequate opportunities for the non-movants to photograph or otherwise record the character and condition of the object to be tested prior to the destructive testing, (2) notice to the non-movants of the time, place, and exact manner of the destructive testing, (3) reasonable opportunity for the non-movants and their experts to observe and record the procedures involved in the destructive testing, (4) the right of the non-movants to conduct or participate in similar tests with a portion of the sample to be tested, (5) provision for discovery of the results of the movant's tests, (6) allocation of costs as justice may require.

*Id.* at 617 (citation and alterations omitted). To be sure, this list is not exhaustive. *See id.*

The parties have already implemented many of these safeguards to date, and the Court will direct them to continue that practice. Accordingly, the parties shall meet and confer to

establish an agreed-upon framework for the disassembly and to discuss the adequate safeguards that they find appropriate for Plaintiffs' testing.  *C.f.*, *Glennon*, 2010 WL 4782773, at *15; *White v. Cooper Tools, Inc.*, CIV. 06-4272, 2010 WL 1418244 (D.S.D. Apr. 6, 2010).

## IV. Conclusion

For the reasons hereinabove stated, the Court will deny Freightliner's motion to compel discovery and grant Plaintiffs' motion to disassemble.  An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE RAPCHAK**, *Executrix of the Estate of John E. Borzik, Deceased* and **WANDA BORZIK**, | ) ) ) ) ) 2:13-cv-1307 |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| **FREIGHTLINER CUSTOM CHASSIS CORPORATION, HALDEX BRAKE PRODUCTS CORPORATION, and SAF-HOLLAND USA, INC.**, | ) ) ) ) ) |
| Defendants. | ) ) |

## ORDER OF COURT

AND NOW, this 20th day of August, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION OF DEFENDANT FREIGHTLINER CUSTOM CHASSIS CORPORATION TO COMPEL DISCOVERY (ECF No. 57) is **DENIED**; and that PLAINTIFFS' MOTION TO DISASSEMBLE THE SUBJECT HALDEX VALVE (ECF No. 58) is **GRANTED** and Plaintiffs may disassemble the subject left height control valve and dump valve and may conduct materials testing of any substance or components found within those valves.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **John A. Caputo, Esquire**
Email: ginny@jcaputo.com

**Antonino Legeza, Esquire**
Email: alegeza@babstcalland.com
**Kevin A. Szanyi, Esquire**
Email: kszanyi@websterszanyi.com

**Marc J. Felezzola, Esquire**
Email: mfelezzola@babstcalland.com
**Thomas S. Lane, Esquire**
Email: tlane@websterszanyi.com

**Kenneth T. Newman, Esquire**
Email: knewman@tthlaw.com
**Steven G. Emerson, Esquire**
Email: semerson@stinson.com
**Thomas H. Davis, Esquire**
Email: tdavis@stinson.com

**Robert J. Behling, Esquire**
Email: rbehling@dbbk.com
**Eric D. Stubenvoll, Esquire**
Email: estubenvoll@fisherkanaris.com

(via CM/ECF)