IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE RAPCHAK**, *Executrix of the Estate of John E. Borzik, Deceased,* and **WANDA BORZIK**, <br><br>       **Plaintiffs,** <br><br>vs. <br><br>**FREIGHTLINER CUSTOM CHASSIS CORPORATION, HALDEX BRAKE PRODUCTS CORPORATION, and SAF-HOLLAND USA, INC.,**[1] <br><br>       **Defendants.** | 2:13-cv-1307 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 94) filed by Defendant, Haldex Brake Products Corporation, with a brief in support (ECF No. 95) and a Concise Statement of Material Facts ("CSMF") (ECF No. 96). Plaintiff Wanda Borzik has filed a response to the motion (ECF No. 107) and a brief in opposition (ECF No. 108); Haldex has filed a reply brief (ECF No. 109). Accordingly, the motion is ripe for disposition.

### I. Background

#### A. Factual Background[2]

This case arose out of the tragic death of John E. Borzik ("Decedent") while inspecting the undercarriage of his 2008 Tour Master recreational vehicle ("motorcoach") on September 11,

---

1. Recently, the party named in the caption as Defendant "SAF-Holland USA, Inc." filed a motion for leave to file an amended answer to Plaintiffs' complaint, in which it identified itself as SAF-Holland, Inc., "formerly known as SAF-Holland USA, Inc." (ECF No. 111 at 1). The Court will amend the caption in an Order that follows this Memorandum Opinion.

2. The summary judgment record consists of the November 25, 2014 deposition of Wanda Borzik.

2011. That day, Decedent parked his motorcoach in the driveway of the home that he shared with his mother, Wanda Borzik, to perform maintenance work on the vehicle. To do so, Decedent placed himself underneath the motorcoach by lying supine on his back near the right side of the rear axle on a creeper.

Sometime before noon on that day, Ms. Borzik left the home with a friend to attend a car show in another part of town. As they departed, Ms. Borzik's friend spoke with Decedent, who was still beneath the motorcoach performing maintenance and/or cleaning its undercarriage. At some point thereafter, the motorcoach descended onto Decedent, trapped him, compressed his chest and caused him to asphyxiate over a period of time, which eventually resulted in his death.[3]

Later that afternoon, Ms. Borzik returned home from the car show, observed Decedent's legs extended out from beneath the motorcoach, and asked him "are you still there?" There was no response from Decedent. Ms. Borzik then entered her home and walked onto the back porch, where she phoned her daughter, Bonnie Rapchack, the now-Executrix of Decedent's estate.

Ms. Borzik later received a call from Sherri Whipkey, Decedent's ex-wife, who was attempting to return his telephone call from earlier that day. Ms. Borzik took the phone outside where she found that the motorcoach had descended onto Decedent's forehead and chest, trapping him underneath. At this point, Ms. Borzik presumed that her son was dead. Ms. Borzik nevertheless attempted to extract Decedent from beneath the motorhome by placing her hand underneath the Decedent's forehead and on his chest, but she was unable to do so. Ms. Borzik then attempted to raise his arm, finding that rigor mortis had already set in. Afterward, Ms. Borzik returned back inside and to her call to Ms. Whipkey followed by 9-1-1.

---

3. Plaintiffs submit that "there is no evidence that [the] [D]ecedent died while Mrs. Borzik was at the car show and he may have died after she returned," there is no dispute that Ms. Borzik did not witness this tragic event as it occured. Resp. in Opp. at 2, ECF No. 107. In fact, Plaintiffs admit that Ms. Borzik "did not observe the inches of movement in the descent of the vehicle frame upon [the] [D]ecedent when the air suspension deflated and sunk." *Id.*

### B. Procedural History

Plaintiffs initiated this action on September 6, 2013 by filing a five-count Complaint in which they allege various product liability claims at Counts One - Four and a negligent infliction of emotional distress ("NIED") claim at Count Five. Plaintiffs seek damages pursuant to the Pennsylvania Survival Action, 42 P.S. § 8302 and the Wrongful Death Act, 42 P.S. § 8301 and also claim that they are entitled to an award of punitive damages under the circumstances.

On April 24, 2015, Haldex filed the instant motion in which it requests that the Court enter summary judgment in its favor as to the NIED claim of Ms. Borzik. Plaintiffs oppose the motion, which the Court will now address.

### II. Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To withstand a motion for summary judgment, the nonmoving party must show a genuine dispute of material fact for trial by citing to particular parts of material in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). *See Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–248. *See Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c) (1)(A), or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact," Fed. R. Civ. P. 56(c)(1)(B). In reviewing all of the record evidence submitted, the court must draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

The court is not permitted to weigh evidence or to make credibility determinations at this stage. *Anderson*, 477 U.S. at 255. Those functions are for the jury, not the court. *Id.* The court is thus limited to deciding whether there are any disputed issues and, if so, whether they are both genuine and material. *Id.*

## III. Discussion

Haldex argues that it is entitled to summary judgment on the NIED claim asserted by Ms. Borzik because: (1) she was not present at or near the scene of the accident; and (2) she did not contemporaneously observe the accident when it occurred. In response, Ms. Borzik asserts that she is able to recover as a bystander because she visualized the circumstances of the current and ongoing tortious conduct.

NIED is an actionable tort under Pennsylvania law. *Sinn v. Burd,* 404 A.2d 672, 686 (Pa. 1979); *Armstrong v. Paoli Mem'l Hosp.,* 633 A.2d 605, 609 (Pa. Super. Ct. 1993). In order to maintain a claim for NIED, a plaintiff must demonstrate one of four factual scenarios: (1) where the defendant owed a fiduciary duty toward the plaintiff; (2) where the plaintiff suffered a physical injury that caused the emotional distress; (3) where the plaintiff was in the "zone of danger" of the defendant's tortious conduct; or (4) where the plaintiff witnessed a serious injury to a close family member. *Doe v. Phila. Cmty. Health Alt. AIDS Task Force,* 745 A.2d 25, 27 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001).

Where, as here, a plaintiff seeks to recover under the bystander theory, Pennsylvania law requires that a plaintiff must be "reasonably foreseeable" due to the traumatic injury caused by the defendant. *See Sinn* 404 A.2d at 686; *see also Turner v. Medical Center,* 686 A.2d 830, 832 (Pa. Super. Ct. 1996); *Mazzagatti v. Everingham,* 516 A.2d 672, 677 (Pa. 1986). To that end, the Supreme Court of Pennsylvania has adopted a three-part inquiry, which requires that a plaintiff must: "(1) be located at or near the scene of the accident; (2) suffer an emotional shock as a result of a contemporaneous and sensory observance of the accident; and (3) be closely related to the victim of the accident." *McDaniel v. Kidde Residential & Fire & Commercial*, No. 2:12-CV-1439, 2015 WL 1326332, at *11 (W.D. Pa. Mar. 24, 2015) (citing *Sinn* 404 A.2d at 686). As

such, the observance of the plaintiff does not have to be purely visual: one can witness the traumatic event by other sensory perceptions. *See Neff v. Lasso,* 555 A.2d 1304, 1314 (Pa. Super. Ct. 1989); *Krysmalski v. Tarasovich,* 622 A.2d 298, 304 (Pa. Super. Ct. 1993) (quoting *Neff*, 555 A.2d at 1314).

Relevant in this instance is that the "contemporaneous observance" requirement is intended to help distinguish those plaintiffs who suffer severe emotional distress as a direct and foreseeable result of the defendant's negligence from those plaintiffs who suffer feelings of anguish and grief caused by an injury to a loved one. *See Mazzagatti* at 679. The Pennsylvania Supreme Court has been explicit in its policy not to extend this area of tort recovery and allow damages for a plaintiff's grief. *See Sinn* at 692. Thus, in order to be contemporaneous, the observance must be an immediate and direct trigger for the emotional distress. *See Krysmalski v. Tarasovich,* 622 A.2d 298, 304 (Pa. Super. Ct. 1993); *Bloom v. Dubois Reg'l Med. Ctr.,* 597 A.2d 671, 682 (Pa. Super. Ct. 1991); *Neff*, 555 A.2d at 1313; *see also Harvey ex rel. Hampton v. Pilgrim's Pride Corp.*, No. CIV.A. 03-03500, 2003 WL 22880887, at *2 (E.D. Pa. Dec. 4, 2003) ("This test has been refined to require that the severe emotional distress to the plaintiff 'result[ed] from the direct and contemporaneous observance of the accident or conduct.'") (quoting *Mazzagatti* 516 A.2d at 678).

Moreover, no Pennsylvania case has eliminated this requirement in order to recover for NIED. Instead, Pennsylvania case law has only permitted recovery for NIED where the claimant has actually witnessed the negligent infliction of harm. *McDaniel,* 2015 WL 1326332 at *12. For example, in *Mazzagatti*, the "Supreme Court denied recovery to a mother who arrived to see her injured daughter *after* the traumatic accident had occurred." *McDaniel*, 2015 WL 1326332, at *12 (citing 516 A.3d at 679) (emphasis in original). Similarly, in *Bloom*, the court dismissed

husband's claim "where there was no infliction of injury by [the medical center and psychiatrist] defendants when [his] wife attempted to commit suicide." *Id.* (citing 597 A.2d at 682-83). And in *Yandrich*, the court denied recovery "where plaintiff's decedent did not witness son's fatal accident." *Id.* (citing 433 A.2d at 461).

Bearing those standards in mind, the Court will address the instant motion. In support of her position, Ms. Borzik relies primarily on *Neff* and *Krysmalski*. However, those cases are easily distinguishable from the factual scenario here present.

In *Neff,* the Superior Court of Pennsylvania held that a spouse had alleged a viable NIED claim even though she did not see the impact of the accident. 555 A.3d at 1313-14. The Superior Court reasoned that the plaintiff had in fact experienced a contemporaneous sensory perception because she had witnessed her husband driving by with a car following closely behind, heard a crash seconds later, and immediately went to the scene (their front lawn) where she found him unconscious. *Id.* As a result, the Superior Court "conclude[d] that the 'sensory and contemporaneous observance' is not limited to visual sensory perception but [also] includes an aural sensory awareness as well." *Id.* 1314.

Similarly, in *Krysmalski*, the Superior Court reviewed an award to a mother for an NIED claim when a vehicle in a supermarket parking lot struck her two daughters, even though she was not on the scene at the exact moment of impact. 622 A.2d at 303. As in *Neff*, the Superior Court once again reasoned that, although mother did not witness the accident, "she most certainly heard the crash in the parking lot, and knew that her children were at the scene of those events." *Id*. Thus, the Superior Court permitted recovery. *Id.*

Here, there is no genuine issue of material fact as to whether Ms. Borzik observed or heard the traumatic events which occurred contemporaneously with the alleged failure of the

7

height control valve. She did not. In fact, Ms. Borzik was not present at the time the valve allegedly malfunctioned as she was (by her own admission) either at a car show at the time of the incident, or at the very least, not physically present at the time. To be sure, Pennsylvania law requires the personal observation of the event and focuses on "the contemporaneous sensory observance of an isolatable traumatic event, not the facts and circumstances preceding and following the event." *McDaniel,* 2015 WL 1326332 at *12 (citations omitted). And in the absence of any evidence that Ms. Borzik personally observed the incident—through sight, sound, or any other sensory perception—rather than the tragic consequence of the alleged tortious act(s) by Defendant(s), the Court cannot permit her to proceed with her NIED claim.

## IV. Conclusion

For the reasons hereinabove stated, the Court will grant Defendant Haldex's motion for partial summary judgment. An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE RAPCHAK**, *Executrix of the Estate of John E. Borzik, Deceased,* and **WANDA BORZIK**,<br><br>    **Plaintiffs,**<br><br>  vs.<br><br>**FREIGHTLINER CUSTOM CHASSIS CORPORATION, HALDEX BRAKE PRODUCTS CORPORATION, and SAF-HOLLAND USA, INC.,**<br><br>    **Defendants.** | 2:13-cv-1307 |

## ORDER OF COURT

AND NOW, this 10th day of June, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 94) filed by the Defendant Haldex Brake Products Corporation is **GRANTED.**

**IT IS FURTHER ORDERED** that the caption in this action is hereby **AMENDED** as follows:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE RAPCHAK**, *Executrix of the Estate of John E. Borzik, Deceased*, | )<br>)<br>) |
| Plaintiff, | ) 2:13-cv-1307<br>) |
| vs. | )<br>) |
| **FREIGHTLINER CUSTOM CHASSIS CORPORATION, HALDEX BRAKE PRODUCTS CORPORATION, and SAF-HOLLAND, INC.**, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

BY THE COURT:
s/Terrence F. McVerry
Senior United States District Judge

cc: **John A. Caputo, Esquire**
Email: ginny@jcaputo.com

**Antonino Legeza, Esquire**
Email: alegeza@babstcalland.com
**Kevin A. Szanyi, Esquire**
Email: kszanyi@websterszanyi.com

**Marc J. Felezzola, Esquire**
Email: mfelezzola@babstcalland.com
**Thomas S. Lane, Esquire**
Email: tlane@websterszanyi.com

**Kenneth T. Newman, Esquire**
Email: knewman@tthlaw.com
**Steven G. Emerson, Esquire**
Email: semerson@stinson.com
**Thomas H. Davis, Esquire**
Email: tdavis@stinson.com

**Robert J. Behling, Esquire**
Email: rbehling@dbbk.com
**Eric D. Stubenvoll, Esquire**
Email: estubenvoll@fisherkanaris.com